Patricia Ford O'BRIEN, Individually and on behalf of her minor children, Timothy T. O'Brien, Jr., Brenda Ann O'Brien, Lawrence Latour, Glenn Fisher, Sr. and Rose Mulkey

v.

DELTA GAS, INC., Sterling International, Inc., Rockwell International, Inc., Louise Wasich Hingle, ABC Ins. Co., DEF Ins. Co., GHI Ins. Co., ZYX Ins. Co.

Civ. A. No. 78–1692.

United States District Court,
E. D. Louisiana,
New Orleans Division.

March 26, 1980.

Robert M. Murphy, Kenner, La., William A. Glennon, Jr., Hugh M. Glenn, Jr., New Orleans, La., for plaintiffs.

James J. Morse, New Orleans, La., Dominick Scandurro, Jr., Buras, La., Joseph W. Rausch, New Orleans, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

Plaintiffs' claims arise from an explosion and fire which allegedly caused serious injuries to them. The event took place in Empire, Louisiana, in May of 1977. All plaintiffs were present in one particular house when the explosion and fire took place, and all of those plaintiffs have sued the owners of the house, the gas supplier, and the manufacturer and distributor of valves on the gas line in this single suit filed in the Eastern District of Louisiana in May of 1978. Jurisdiction is alleged on the basis of diversity, with all plaintiffs contending that they became residents of Poplarville, Mississippi, in May of 1978—just prior to this suit being filed in Louisiana.

Defendant, Delta Gas, brings a motion to dismiss on jurisdictional grounds based on the contention that plaintiffs were not residing in Mississippi, but had only moved there temporarily in order to bring this diversity action.

Delta Gas further moved for and was granted an evidentiary hearing on this issue. That hearing took place on March 19, 1980, and consisted of the oral testimony of all the adult plaintiffs, as well as one witness called by defendants, plus the introduction of certain documentary evidence which the court has reviewed.

The matter of jurisdiction addressed in the context of this case is, essentially, a factual issue, with the burden of proof resting upon the plaintiffs.

All four of the adult plaintiffs took the stand and gave their sworn testimony.

Each testified on direct examination for about fifteen or twenty minutes and, on cross-examination, for about five or ten minutes. It was the court's impression that certain portions of the direct testimony of the plaintiffs was remarkably similar and, in various particulars, appeared to involve a number of unusual and, essentially, incredible coincidences. The defendants called one witness, Ruby Jones, whose sworn testimony directly contradicted that of the plaintiffs with regard to several critical facts which the court finds to be material to the court's ultimate decision regarding the factual issue of jurisdiction. Specifically, Ruby Jones gave testimony of conversations with Patricia O'Brien which directly refuted the direct testimony of all four plaintiffs regarding the circumstances, intentions and proposed duration of their contended residence in the State of Mississippi.

It is apparent that plaintiffs had taken up residence in Mississippi at the time suit was filed. There is no evidence to refute their showing that they all moved to the same apartment house in Poplarville, Mississippi, at the same time—early May, 1978. Thus, the court must address the question of whether plaintiffs had the requisite intent to remain in that state sufficient to establish diversity jurisdiction in this Louisiana court.[1]

The court concludes that plaintiffs did not, in fact intend to move to Mississippi to remain indefinitely or permanently. Rather, the court concludes that a plan was conceived and orchestrated to cause plaintiffs to move temporarily to Mississippi in an effort to create diversity jurisdiction.

At the time of the event which gives rise to the suit, all plaintiffs were domiciled in Louisiana. Plaintiffs' self-serving testimony relative to their subjective intent to move to Mississippi in order to hunt and fish and enjoy the country life rang false to the court's ears.[2] Further, the testimony and demeanor of the witnesses convinced the court that the adult plaintiffs were simply following an admonition to temporarily set up residence in Mississippi until this suit could be filed and for some not wholly determinate but clearly brief (perhaps, six months) period thereafter in order to be able to factually support the filing of this suit in the United States District Court for the Eastern District of Louisiana.

None of the plaintiffs ever sought meaningful employment in Mississippi. Mr. Latour testified that he and Ms. O'Brien opened a "game room" in Poplarville, Mississippi, but its short life and consistently unsatisfactory economic experience belies its alleged reason for existence. Indeed, it is the court's conclusion that the alleged "game room" was only a part of a completely unconvincing jurisdictional charade.[3]

The court concludes that plaintiffs have failed to establish a bona fide domicile in Mississippi and that, accordingly, this court lacks jurisdiction in this suit, which must be dismissed.

Counsel for defendant, Delta Gas, Inc., is instructed to prepare a judgment consistent with these findings and conclusions.

1. Diversity jurisdiction is vested in the federal courts in Article III, § 2 of the United States Constitution, which provides that "the judicial power shall extend to all Cases . . . between Citizens of different States." This language is reiterated in 28 U.S.C.A. § 1332(a)(1). The Fifth Circuit Court of Appeals has articulated the controlling standard for determining the acquisition of citizenship in a new state as (1) residence, and (2) the intention to remain there indefinitely. *Mas v. Perry*, 489 F.2d 1396 (5th Cir., 1974).

2. In this respect, all four adult plaintiffs give almost identical testimony as to why they had each, separately, concluded that they should move to Poplarville and, also, unconvincingly testified to the strange coincidental circumstances which led them all to take up residence at the same apartment house at the same time in the same town just a few miles across the state line of Louisiana in the State of Mississippi.

3. An examination of the "books" of the "game room" leads to a conclusion that this is not a true record of any business experience but has been prepared simply as evidence of a business operation. The monthly "figures" demonstrate this. The court is of the view that the figures are meaningless and that the so-called "game room" was nothing more nor less than a subsidized effort to portray some business activity on the part of at least two of the adult plaintiffs.