**Dixie Mae KNAPP and Millard Knapp**

v.

**STATE FARM INSURANCE, James E. Schoultz, Schoultz Well Drillers, Inc. and Allstate Insurance Company.**

**Civ. A. No. 80–2316.**

United States District Court,
E.D. Louisiana.

May 16, 1984.

Frank S. Bruno of Bruno, Bruno & Blouin, New Orleans, La., for plaintiffs.

E. Kelleher Simon of Murphy and Simon, New Orleans, La., Howard R. Fussell, Covington, La., for defendants.

## MEMORANDUM OPINION

FELDMAN, District Judge.

This diversity action arises out of an automobile accident between Mrs. Knapp and Mr. Schoultz, while he was on the business of Schoultz Well Drillers. Allstate Insurance Company, Mrs. Knapp's insurer, is sued under the uninsured motorist coverage of its policy. Allstate alleges that Mrs. Knapp was either negligent or contributorily negligent.

The Court is faced with the threshold question of subject matter jurisdiction. The Knapps claim to be domiciled in New York; Mrs. Knapp moved there from Louisiana when she and Mr. Knapp married.

■ It is academic that absent complete diversity of citizenship, a Federal court has no jurisdiction under its limited statutory grant of diversity jurisdiction. 28 U.S.C. § 1332; *See Strawbridge v. Curtis*, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806), and its progeny. James E. Schoultz is alleged to be a resident of the State of Louisiana. Schoultz Well Drillers, Inc. is alleged to be a domestic corporation, with its principal place of business in the State of Louisiana, and is a "citizen" of the State of Louisiana. Thus, if either or both of the Knapps are also citizens of the State of Louisiana, complete diversity is destroyed, and this Court must dismiss this action.

■ The judicially developed definition of citizenship has centered on the concept of domicile. A person is considered a citizen of a State if that person is domiciled in that State. *See, e.g., Hendry v. Masonite Corp.*, 455 F.2d 955 (5th Cir.1972), *cert. denied*, 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315, and Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* Section 3611. The citizenship of the plaintiffs in this case is a mixed question of law and fact. Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* Section 3612, text accompanying note 48, and the cases cited therein. *See also Welsh v. American Insurance Co. of New York*, 186 F.2d 16 (5th Cir.1951).

Plaintiffs argue for the rule which is rooted in ancient law, that a wife's domicile is that of her husband. *See, e.g., Anderson v. Watt*, 138 U.S. 694, 11 S.Ct. 449, 34 L.Ed. 1978 (1891). They say that since Mr. Knapp is domiciled in New York, so is Mrs. Knapp. While this ancient idea might still be the general rule, it is a rule which is honored more in the breach than in the observance. See *Mas v. Perry*, 489 F.2d 1396 (5th Cir.1974), *cert. denied*, 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70. And, as defendants argue, a weakened allegiance to the old rule is brought about largely by the mobile nature of society today. It is not uncommon for a husband to reside in one city and be employed there, and for one's wife to reside in another city, and be employed there, or for the parties to have two domiciles by virtue of the fact that they pay taxes in different States, that they are licensed to drive in different States, or that they are registered to vote in different States. They may belong to clubs and fraternal associations in different States; indeed, they may belong to churches in different States. This is a phenomenom of recent society which makes it difficult to find any justification for the retention of the ancient rule, relied upon by plaintiff, in circumstances such as these (other than that there might be some wisdom in the rule insofar as it prevents a wife from creating or destroying diversity to reach some desired result).

■ Many people have plausible claims to more than one domicile today. There is no reason why the Court cannot resolve the question of a married woman's domicile subject to the same objective evaluation of the circumstances that the Court would make in other contexts without a slavish adherence to a notion which no longer squares with the real world. See Wright,

Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* Section 3614.

■ Factors often taken into account by courts in evaluating the domicile of a party are: current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several others. See Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* Section 3612. Some factors, such as voting, carry more weight than others. *See, e.g., Griffin v. Matthews*, 310 F.Supp. 341 (M.D.N.C.1969), *affirmed per curiam* 423 F.2d 272 (4th Cir.1970).

■ A person has only one domicile at a particular time, although he may have several residences. *Minnesota Mining & Mfg. Co. v. Kirkevold*, 87 F.R.D. 317 (D.Minn.1980); Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* Section 3612, at n. 11 and n. 12. The relevant time for determining the existence of a domicile at a particular location for purposes of diversity jurisdiction is the time that the suit is commenced by the summons and complaint. *Mas v. Perry*, 489 F.2d 1396 (5th Cir.1974), *cert. denied*, 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70. Under the totality of all the circumstances revealed at hearing on the defendants' Motion to Dismiss, the Court finds that Mrs. Knapp has a Louisiana domicile although she claims her domicile is New York because the domicile of her husband is New York. Further, under these circumstances, there are compelling reasons to say that even Mr. Knapp's domicile is in Louisiana, not New York. At the very least, Mrs. Knapp's domicile was and remains in Louisiana. At the least, plaintiffs have a split domicile.

The car involved in the accident was registered in Louisiana at the time suit was filed. Most of the Knapps' time was spent in Louisiana when suit was filed, whether it was because of an illness, as the plaintiffs have argued, or for any other reason. The Court finds nothing in Mr. Knapp's testimony to suggest that Mr. Knapp was forced or compelled to stay in Louisiana by virtue of an illness that so disabled him that he could not remain in New York, and receive medical treatment in New York if indeed he chose to continue New York as his domicile. Mr. Knapp testified that the couple spent winters in Louisiana and summers in New York. At the time of the accident, Mr. Knapp was licensed to drive in Louisiana. Mrs. Knapp herself candidly testified that in 1980 they spent only two weeks in New York.

Mrs. Knapp also had a Louisiana driver's license. She votes now and at the time of suit voted in Louisiana. Her social security payments were received, at the time suit was filed, in Louisiana. Her checking account is in Covington, Louisiana. During the accident investigation Mrs. Knapp gave her address to the investigating officer as Route 1, Bush, Louisiana.

It is true that the couple still have some contacts and ties in New York, but under the totality of all the circumstances here, those ties are so minimal as to lead the Court to find as a matter of fact that the plaintiff, Dixie Mae Knapp, at the time suit was filed in June 1980, was a Louisiana domiciliary, and that if Mr. Knapp was still a domiciliary of New York, Mrs. Knapp had a separate or split domicile of her own. (However, the Court also finds that Mr. Knapp too was a domiciliary of the State of Louisiana, and that he really followed his wife to Louisiana, as indicated by his own candid testimony). Under either test, whether the traditional one of attributing the husband's domicile to the wife, or the more enlightened one, the test which recognizes the potential of split domiciles, this Court finds that plaintiff, Dixie Mae Knapp, was a domiciliary of the State of Louisiana at the time this suit was filed. Therefore, as a matter of law, this Court lacks subject matter jurisdiction over this action, because at the time of suit, the requisite complete diversity of citizenship did not exist between the parties. Accord-

908

ingly, the motion of defendants to dismiss for lack of subject matter jurisdiction is GRANTED.